J-S02014-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTWAIN WELLS | : | |
| | : | |
| Appellant | : | No. 1034 EDA 2020 |

Appeal from the Judgment of Sentence Entered October 18, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000120-2018

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.: Filed: April 8, 2021

Appellant, Antwain Wells, appeals from the judgment of sentence of 20-50 years' imprisonment, imposed after a jury convicted him of involuntary deviate sexual intercourse with a person less than 16 years of age (IDSI), 18 Pa.C.S. § 3123(a)(7); aggravated indecent assault of a person less than 16 years of age, 18 Pa.C.S. § 3125(a)(8); and unlawful contact with a minor as a sexual offense, 18 Pa.C.S. § 6318(a)(1). We affirm.

The trial court summarized the background of this case as follows:

**Procedural History**

On April 23, 2019, Appellant … proceeded to trial before this [c]ourt, sitting without a jury. He was convicted of [the above-stated offenses]. Sentencing was deferred for a presentence report and mental health evaluation.

A sentencing memorandum, with exhibits, was filed by counsel for Appellant on October 16, 2019. A sentencing memorandum, with exhibits, was filed by the Commonwealth on October 17, 2019.

On October 18, 2019, Appellant was sentenced to 8-20 years['] incarceration on the IDSI conviction[,] 8-20 years['] incarceration on the [u]nlawful [c]ontact with a [m]inor conviction, and 4-10 years['] incarceration on the [a]ggravated [i]ndecent [a]ssault conviction. All of the sentences were imposed consecutively, for an aggregate sentence of 20-50 years[' imprisonment].

On October 25, 2019, Appellant filed a timely motion for reconsideration of sentence. That motion was denied by operation of law on February 24, 2020.

A timely notice of appeal was filed on March 12, 2020.

Pursuant to Pa.R.A.P. 1925(b)(2) and (3), the [c]ourt entered an order on June 8, 2020, directing the filing of a [s]tatement of [e]rrors complained of on [a]ppeal pursuant to Pa.R.A.P. 1925(b), not later than [21] days after entry of the order, or after preparation of all necessary transcripts.

A timely [Rule] 1925(b) statement of errors was filed on July 7, 2020.[1, 2]

_____

[1] The trial court subsequently issued a Rule 1925(a) opinion.

[2] The record does not conform to the trial court's statements regarding its Rule 1925(b) order and Appellant's response. Our review of the record shows that, on June 8, 2020, the trial court ordered Appellant to file a concise statement within 21 days after entry of its order, *i.e.*, on or before June 29, 2020, and warned that any issue not properly included in the statement, timely filed and served, would be deemed waived. *See* Rule 1925(b) Order, 6/8/20, at 1. In that order, the court additionally directed that Appellant file within 10 days, a certification, with supporting documents, attesting that he ordered and paid for the relevant transcripts. *Id.* The court's order also stated that, "upon filing of the foregoing certification, Appellant is granted leave to file a Supplemental Statement of Errors not later than [21] days after all ordered transcripts have been posted to the Court Reporting System…." *Id.* Subsequently, Appellant filed his certification on June 17, 2020, representing that he was still waiting for certain transcripts. He did not file a Rule 1925(b) statement until July 7, 2020, about a week after he said he received the transcripts.

Appellant's Rule 1925(b) statement was facially untimely; he did not file it within 21 days of the trial court's order and then supplement it after he

**Factual History**

***Trial Evidence***[1]

> [1] On [a]ppeal, Appellant only raises issues relating to sentencing. Accordingly, the recitation of the trial evidence will, for the most part, be limited to a summary of the conduct giving rise to the offenses or otherwise relevant to sentencing.

The complainant, A.D., was a 15-year old, ninth grade high school student in November of 2017. She lived with her mother, and younger brother and sister. A.D. had an older sister who did not live with her. A.D. travel[ed] to and from school by trolley and bus. The trip to school took A.D. about an hour and a half.

At the time of the incident, Appellant had been the boyfriend of A.D's[] mother for several years. Appellant lived with A.D. and her family at a prior address, but he was not living with them at

_____

received the transcripts, as directed. However, the docket does not set forth the date of service of the trial court's Rule 1925(b) order. Pa.R.Crim.P. 114(C)(2) (providing that docket entries shall contain, *inter alia*, the date of service or court notice). Consequently, we cannot conclude that Appellant failed to timely comply with the court's order and, therefore, we do not find waiver. ***See Commonwealth v. Andrews***, 213 A.3d 1004, 1009-10 (Pa. Super. 2019) ("[I]f the [trial court] docket does not show that notice of the entry of a Rule 1925(b) order was provided to an appellant, then we will not conclude that the appellant's issues have been waived for failure to file a Rule 1925(b) statement. The fact that the appellant actually received notice of the Rule 1925(b) order is irrelevant if the docket does not reflect that notice was sent.") (cleaned up); ***Commonwealth v. Chester***, 163 A.3d 470, 472 (Pa. Super. 2017) ("Based upon the lack of recordation in the docket, we are unable to determine the date of service of the Order, as required under Criminal Rule 114, and cannot conclude that [the appellant] failed to comply with the … court's directive to file a concise statement."). Moreover, even if the docket indicated proper service, we would still not find Appellant's issue waived due to his untimely Rule 1925(b) statement. It is well-established that, "if there has been an untimely filing, this [c]ourt may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal." ***Commonwealth v. Burton***, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*). Thus, Appellant's untimely filing of his Rule 1925(b) statement is of no moment here.

their then[-]current address. Although Appellant was not her biological father, A.D. called Appellant "Dad" for a time.

On the morning of November 29, 2017, A.D. left home to catch the trolley to school. While walking to the trolley, Appellant called out to A.D. from his car and offered her a ride to school. While en route, Appellant told A.D. [that] he had to make a stop. He pulled into a parking area and left the car for about two minutes, while A.D. remained in the car playing a game on her phone.

Upon returning to the car, Appellant spoke on his phone for a minute, and then locked the car doors. Feeling uncomfortable, A.D. started talking nervously about the game she was playing, to which Appellant responded, ["Y]ou're not advanced enough for the game I want to play.["] Appellant then said to A.D.: "[Y]ou're about to suck my dick." When A.D. said she was not, Appellant pulled out a screwdriver, which he held to A.D.'s neck. He then demanded that A.D. perform oral sex. Appellant pulled his pants down[,] and A.D. then proceeded to do so. As she was describing these events at trial, A.D. stopped and asked the [c]ourt[,] "[C]an we take a break?"

At some point, Appellant told A.D. to pull her pants down and then to get in the back seat of the car, which she did. Appellant went to the back seat with A.D., said he was going to make her vagina wet[,] and proceeded to put his mouth on her vagina. Appellant then placed his fingers in A.D.'s vagina, before attempting to place his penis in her vagina. Appellant's efforts were extremely painful to A.D.[,] and he was not able to insert his penis into her vagina. Appellant then ordered A.D. to turn around and he stood behind her, outside the car, as she lay face-down on the back seat, with her lower body outside of the car.

Appellant then inserted his penis into A.D.'s rectum and proceeded to move it back and forth inside her. Appellant then made A.D. suck his penis again, at which point he ejaculated.

Appellant then ordered A.D. into the back seat of the car, and told her to lie flat. At some point[,] she climbed back into the front seat. Appellant then drove A.D. to school and dropped her about a block from school. On the way, Appellant asked A.D. if she was mad at him and told her that if she said anything he will [*sic*] kill her mother. Appellant then gave A.D. $12 or $13. He also told A.D. that if she didn't say anything, he would give her money and get her the iPhone he knew she wanted.

When A.D. arrived at school, she told her older sister, who was also a student there, that a friend had been raped and that the man threatened to kill her mother, and asked for advice on what to do. Her sister advised A.D. to tell the friend to tell someone, then they parted. After about 20 minutes, A.D. texted her sister that the friend was actually her. Also, while A.D. was in school, Appellant was texting her that she was a liar. He continued to text A.D., saying he was sorry, then calling her a liar and reminding her of a deal she had made, apparently referring to getting her the iPhone and giving her money if she didn't tell anyone what happened.

A.D. left school and went with her sister to her sister's godmother's house. From there[,] the police were called. A.D. was taken to the hospital for an examination and [was] later interviewed by the Philadelphia Children's Alliance…. Appellant's DNA was found in … A.D.'s pants and underwear, with protein from seminal fluid.

### *Sentencing*

Prior to sentencing, the [c]ourt received the [p]re[-s]entence [i]nvestigation [r]eport, the [m]ental [h]ealth [e]valuation, and the sentencing memorandum of each side. Additionally, the [c]ourt heard the arguments of counsel, heard from Appellant's mother, and heard a letter written by A.D. Appellant declined the opportunity for allocution.

A.D.'s letter was read at sentencing as follows:

> Dear Judge Campbell, my name is [A.D.], and I'm about to be 17 years old. Currently, I'm living in the foster care system after I was sexually abused by [Appellant] just after my 15th birthday. I'm here today because I want you to know how it[ has] affected my life so that you understand why I would like to see [Appellant] locked up for as long as possible. I met [Appellant] from my mother. That was her boyfriend and I knew him for some time. My mom didn't have a job so every time she needed money[,] she would run to him. He used to pay most of the bills. When there was no food in the house, he'd bring us food. As time went on, we got really close and we developed a bond. I called him dad and I really trusted him. When the assault happened, it took a toll on my life. I became very depressed and not myself. I was happier before. I now have my wall up and I find it hard to trust people. I always feel mad now

- 5 -

and I'm easily irritated. I didn't think about what people thought of me before, but now I have to. I could wear what I wanted and not be worried. Now I feel very sensitive and cry very easily. Since this happened[,] I don't like being home alone. I can't be around men without feeling uncomfortable. It's affected my ability to be in a relationship because when other men try to touch me[,] I think of [Appellant]. I also get triggered by shows and hearing other stories of sexual assault. Before this happened[,] I was living with my family and not feeling like an orphan. Now I am in foster care where I worry about where I'm going to live and who I'm going to live with. I haven't seen my younger sister or brother for two years. I think they're mad at me for telling the truth about what happened. This changed my relationship with my mother too. I am unable to forgive her for not believing me and putting things in people's head[s] about me that weren't true. This ruined her too because now she's homeless, sad, and saying she wants to kill herself. It[ has] led to her depression and need for medication. She hasn't been able to recover enough to do what's needed so that we can go home if we wanted to. When I found out that I had to testify in front of the judge, the man that did this to me, and everybody, I felt really scared and emotional. I didn't want to talk about it. I wanted to push it to the back of my head and pretend it never happened. When I found out I had to testify, I felt broke[n]. I wanted to kill myself. I felt that everyone will [*sic*] look at me different[ly]. It was really stressful. I didn't want to see his face. I was also scared to testify because [Appellant] told me that if I said anything[,] there would be consequences. He said he would kill my family and even if he was in jail[,] he knew people to do his dirty work. The reason I did testify is because I wanted [Appellant] to be in jail. I don't want him on the street. I know what kind of person he is, and I didn't want him out there, out so that he could do this to other people like his nieces and nephews. I was scared but I had to get through it because I needed him to pay for what he did. He's messed up my whole life and I don't know if I'll ever feel normal again. Thank you for taking this into consideration when sentencing [Appellant]. [Signed, A.D.]

Trial Court Opinion (TCO), 8/3/20, at 1-6 (internal citations omitted; most

brackets added).

On appeal, Appellant raises a single issue for our review:

Did not the lower court impose a manifestly excessive and unreasonable sentence of 20 to 50 years['] confinement, which was contrary to the fundamental norms that underlie the sentencing process and to a specific provision of the Pennsylvania Sentencing Code, 42 Pa.C.S.[] § 9721(b), which requires in part that a sentencing court consider a defendant's background and rehabilitative needs?

Appellant's Brief at 3.

Appellant's claim implicates the discretionary aspects of his sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, … 909 A.2d 303 ([Pa.] 2006). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, … 831 A.2d 599 ([Pa.] 2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question

- 7 -

exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra*, *supra* at 912–13.

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, the record demonstrates that Appellant filed a timely notice of appeal, properly preserved this claim in his post-sentence motion, and included a Rule 2119(f) statement in his appellate brief in compliance with our Rules of Appellate Procedure. Therefore, we proceed to determining whether Appellant has raised a substantial question to meet the fourth requirement of the four-part test set forth above.

Appellant advances in his Rule 2119(f) statement that the trial court "imposed a manifestly excessive and unreasonable sentence that runs contrary to the fundamental norms that underlie the sentencing process and misapplied provisions of … 42 Pa.C.S. § 9721(b)[,] and the Sentencing Code, 204 Pa. Code § 303.13." Appellant's Brief at 12; *see also* 42 Pa.C.S. § 9721(b) (providing general standards for sentencing); 204 Pa. Code § 303.13 (addressing guideline sentence recommendations for aggravated and mitigated circumstances). He says that "[t]he lower court imposed a statutory maximum sentence of 50 years (with a minimum of 20 years or 240 months), outside of the Sentencing Guidelines, based solely on the nature of the crime and ignored both Appellant's mitigation and rehabilitative needs." Appellant's Brief at 12-13. We determine that Appellant's claim that the trial court

imposed a manifestly excessive sentence, based solely on the nature of the crime he committed and outside of the Sentencing Guidelines, raises a substantial question. *See Commonwealth v. Boyer*, 856 A.2d 149, 152 (Pa. Super. 2004) ("In [the a]ppellant's [Rule] 2119(f) statement[,] he alleges that the trial court imposed a manifestly excessive sentence and focused solely on the serious nature of the crimes he committed. We find that [the a]ppellant has raised a substantial question….") (citation omitted); *Commonwealth v. Hanson*, 856 A.2d 1254, 1257 (Pa. Super. 2004) ("Under 42 Pa.C.S.[] § 9781(c)(3), a claim that 'the sentencing court sentenced outside the sentencing guidelines,' … presents … a substantial question.") (citation omitted); *see also* 42 Pa.C.S. § 9781(c)(3) ("The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds … the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.").

Accordingly, we will review the merits of Appellant's claim, mindful of the following standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Johnson-Daniels*, 167 A.3d 17, 28 (Pa. Super. 2017) (citation omitted).

- 9 -

Further, our Supreme Court has stated:

Through the Sentencing Code, the General Assembly has enacted a process by which defendants are to be sentenced. As a threshold matter, a sentencing court may select one or more options with regard to determining the appropriate sentence to be imposed upon a defendant. These options include probation, guilt without further penalty, partial confinement, and total confinement. 42 Pa.C.S. § 9721(a). In making this selection, the Sentencing Code offers general standards with respect to the imposition of sentence which require the sentencing court to impose a sentence that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Thus, sentencing is individualized; yet, the statute is clear that the court must also "consider" the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing. *Id.* If the court imposes a sentence outside of the sentencing guidelines, it must provide a written statement setting forth the reasons for the deviation and the failure to do so is grounds for resentencing.

The Sentencing Code also sets forth express standards regarding appellate review of a defendant's sentence. As is apparent from the statutory provision setting forth the parameters of appellate review, the central focus of substantive appellate review with respect to a sentence outside of the guidelines is whether the sentence is "unreasonable":

> **(c) Determination on appeal.**—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> \*\*\*
>
> (3) *the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.*
>
> In all other cases[,] the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c) (emphasis supplied).

In making this "unreasonableness" inquiry, the General Assembly has set forth four factors that an appellate court is to consider:

**(d) Review of record.**—In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

Thus, under the Sentencing Code[,] an appellate court is to exercise its judgment in reviewing a sentence outside the sentencing guidelines to assess whether the sentencing court imposed a sentence that is "unreasonable." 42 Pa.C.S. § 9781(c), (d).

Yet, what makes a sentence "unreasonable" is not defined in the statute. Generally speaking, "unreasonable" commonly connotes a decision that is "irrational" or "not guided by sound judgment." The Random House Dictionary of the English Language, 2084 (2nd ed. 1987); *see* 1 Pa.C.S. § 1903 (words to be construed according to their common and approved usage). While a general understanding of unreasonableness is helpful, in this context, it is apparent that the General Assembly has intended the concept of unreasonableness to be a fluid one, as exemplified by the four factors set forth in Section 9781(d) to be considered in making this determination. Indeed, based upon the very factors set out in Section 9781(d), it is clear that the General Assembly intended the concept of unreasonableness to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition. *Cf. United States v. Crosby*, 397 F.3d 103, 115 (2[d] Cir. 2005) (explaining concept or reasonableness in context of sentencing matters).

Thus, given its nature, we decline to fashion any concrete rules as to the unreasonableness inquiry for a sentence that falls outside of applicable guidelines under Section 9781(c)(3). We are of the view, however, that the Legislature intended that considerations found in Section 9721 inform appellate review for unreasonableness. That is, while a sentence may be found to be unreasonable after review of Section 9781(d)'s four statutory

- 11 -

factors, in addition a sentence may also be unreasonable if the appellate court finds that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, *i.e.*, the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b). Moreover, even though the unreasonableness inquiry lacks precise boundaries, we are confident that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review.

***Commonwealth v. Walls***, 926 A.2d 957, 962-64 (Pa. 2007) (footnote omitted).

Here, Appellant — who had a prior record score of zero and was 36 years old at the time of sentencing — complains that he received "virtually a life sentence[,] as the lower court's fifty[-]year sentence likely extends beyond his life expectancy." Appellant's Brief at 14. He characterizes this sentence as "disproportionate and unreasonable." ***Id.*** at 15. In addition, he states that the trial court sentenced him "based solely on the severity of the offense, despite [his] substantial rehabilitative needs due to his childhood trauma as a result of the extreme violence that he witnessed, the parental violence he endured, and his own alcohol abuse and unchecked bipolar disorder." ***Id.***

In sentencing Appellant, the trial court explained:

This court has considered the arguments of both counsel, the presentence report, the mental health evaluation report, the sentencing guidelines form, the sentencing memorandums of both parties; this court[] considered the testimony of Linda Wells, [Appellant's] mother; this court[] considered the victim impact statement; this court[] also considered [Appellant's] criminal history as a whole; this

> court[] considered a number of mitigating factors including [Appellant's] tragic personal history, his consistent work history, his good behavior and engagement while in custody so far; this court has also considered aggravating factors, which are numerous in this case. They include[,] but are not necessarily limited to[,] the impact on the victim in multiple ways. The circumstances of this offense are particularly troubling. Any rape case is troubling but this situation is distinguished from many other rapes in multiple ways that includes [Appellant's] abuse of his custodial authority and trust to accomplish his crimes, his behavior of constant humiliation not only during the act but afterwards, his demonstrated manipulation, and his threats and everything that he did to keep this incident from coming to court. His behavior[] also confirms his lack of remorse, depravity of heart, and the danger that he does pose to society. [Appellant's] rehabilitative needs will require substantial confinement although that purpose, admittedly, will be overcome by the need to protect society.

> N.T.[,] 10/18/19[, at] 31-32.

> The record is clear that the [c]ourt considered all relevant factors in imposing [the] sentence. The sentence imposed was not unduly harsh under the circumstances, and was based on careful consideration of the factors for sentencing under 42 Pa.C.S. § 9721.

TCO at 7-8.[3]

We discern no manifest abuse of discretion. Despite Appellant's assertions, the trial court considered his background and rehabilitative needs in rendering its sentence. We also point out that it reviewed Appellant's pre-sentence investigation report prior to sentencing him, and note that, "where the sentencing judge had the benefit of a pre[-]sentence investigation report,

---

[3] We note that, for the most serious offenses, IDSI and unlawful contact with a minor, the parties agreed at sentencing that the offense gravity score was a 12, and the guidelines were 48 to 66 months, plus or minus 12 months' confinement. *See* TCO at 7 (citing N.T. at 4); Appellant's Brief at 9.

it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Boyer**, 856 A.2d at 154 (citation omitted). In addition, the trial court provided a reasonable explanation for why it imposed a substantial term of imprisonment, noting the abuse of trust, threats, and remorselessness of Appellant, as well as the danger he poses to society. Accordingly, we conclude that the trial court did not manifestly abuse its discretion in sentencing Appellant and, therefore, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/21